IN RE the MARRIAGE OF Dawn M. SOERGEL,
a/k/a Dawn M. Raufman and Gary Soergel: Grace
SOERGEL and George Soergel, Petitioners-Appellants,

v.

Dawn SOERGEL RAUFMAN, Respondent.

Supreme Court

*No. 88–1069. Argued March 6, 1990.—Decided April 20, 1990.*

(Also reported in 453 N.W.2d 624.)

For the petitioners—appellants there was a brief (in court of appeals) by *Kristen E. Falk* and *Hart, Sanborn, Isaacson & Falk,* Edgerton, and oral argument by *Kristen E. Falk.*

For the respondent there was a brief (in court of appeals) by *Judith Sperling Newton* and *Boushea, Newton and Segal Law Offices,* Madison, and oral argument by *Judith Sperling Newton.*

CALLOW, WILLIAM G., J.   This case is before the court on certification from the court of appeals pursuant to sec. (Rule) 809.61, Stats. The petitioners-appellants, Grace and George Soergel (the Soergels), appeal from an order[1] of the Circuit Court for Rock County, Judge Patrick J. Rude.

We begin by stating the facts. Dawn Soergel Raufman and Gary Soergel were divorced on October 1, 1984. Gary Soergel is the son of the Soergels. There was one child born of the marriage of Dawn Soergel Raufman and Gary Soergel. The child was born on February 15, 1981. In the divorce agreement, custody of this child was granted to Dawn Soergel Raufman. On July 7, 1986, Gary Soergel voluntarily consented to the termination of his parental rights to this child, and Dawn Soergel Raufman's present husband, Keith Raufman, is now this child's adoptive father. Dawn Soergel Raufman and Keith Raufman did not allow the Soergels to visit the child after Gary Soergel terminated his parental rights and Keith Raufman adopted the child.

---

[1]Section 808.03(1), Stats., provides that "[a] final judgment or a final order of a circuit court may be appealed as a matter of right to the court of appeals . . .. A final judgment or final order is a judgment or order entered in accordance with s. 806.06(1)(b) or 807.11(2)." In this case, it appears that the appellant has appealed from the circuit court's memorandum decision that was entered. We conclude that this decision is final and appealable because under the circumstances of this case no further order or judgment was contemplated. *See, e.g., Fredrick v. City of Janesville,* 92 Wis. 2d 685, 686–87, 285 N.W.2d 655 (1979).

On February 11, 1988, the Soergels, seeking visitation rights to the child, filed a petition for visitation in the court that granted the divorce. The petition was filed pursuant to sec. 767.245(4), Stats. (1985–86),[2] which provides as follows:

> The court may grant reasonable visitation privileges to a grandparent or greatgrandparent of any minor child upon the grandparent's or greatgrandparent's petition to the court with notice to the parties if the court determines that it is in the best interests and welfare of the child and issue any necessary order to enforce the same.

The circuit court denied the Soergels' petition for visitation, reasoning that Dawn Soergel Raufman, Keith Raufman, and the child formed an intact family and that therefore the Soergels had no rights to visitation under sec. 767.245(4) according to the decision of the court of appeals in *Van Cleve v. Hemminger,* 141 Wis. 2d 543, 415 N.W.2d 571 (Ct. App. 1987).

---

[2]This provision has been amended and renumbered since the Soergels filed their petition. The amended version, which applies to petitions filed after May 3, 1988, is now set forth in sec. 767.245(1), Stats. (1987–88), and provides as follows:

> **Visitation rights of certain persons. (1)** Upon petition by a grandparent, greatgrandparent, stepparent or person who has maintained a relationship similar to a parent-child relationship with the child, the court may grant reasonable visitation rights to that person if the parents have notice of the hearing and if the court determines that visitation is in the best interest of the child.

The legislative history of this provision shows that the intent of the legislature was to expand the provision that is at issue in the case at hand by permitting the court to grant visitation privileges to a stepparent or any person who has maintained a parent-child type relationship with the child. Comments—1987 Act 355, sec. 767.245, Stats. Ann. (West 1989 Supp.).

The Soergels appealed, the court of appeals certified the appeal to this court, and we granted the certification.

The only issue we need to address on appeal is whether the Soergels may obtain visitation privileges with the child under sec. 767.245(4), Stats., after the child was adopted by the child's stepfather, Keith Raufman. We conclude that the Soergels have no right to visitation privileges under sec. 767.245(4) because the child was adopted by the child's stepfather.

On appeal, the Soergels argue that their son's voluntary termination of his parental rights to the child and the subsequent stepparent adoption of the child by Dawn Soergel Raufman's present husband did not preclude the granting of visitation rights to them under sec. 767.245(4), Stats. The Soergels recognize that the visitation provision is silent on the issue of the effect of the termination of their son's parental rights and the subsequent adoption on their grandparental visitation rights. However, the Soergels point out that ch. 48 of the Wisconsin Statutes, the Children's Code, which contains the provisions governing termination of parental rights and adoption, is also silent on this issue. The Soergels thus argue that, had the legislature intended that their grandparental visitation rights would not survive the termination of their son's parental rights and the subsequent stepparent adoption by Keith Raufman, the legislature would have expressly stated such intent in ch. 48. According to the Soergels, their grandparental visitation rights are not dependent upon whether the termination of their son's parental rights and the subsequent stepparent adoption have occurred; rather, whether they should be granted visitation rights to the child turns upon what is in the child's best interests.

Dawn Soergel Raufman, on the other hand, contends that any right of grandparental visitation the

Soergels may have had under sec. 767.245(4), Stats., did not survive the termination of their son's parental rights and the subsequent stepparent adoption. According to Dawn Soergel Raufman, as a result of the termination of Gary Soergel's parental rights to the child and Keith Raufman's adoption of the child, an intact family exists that is indistinguishable from a family composed entirely of biologically-related members. Under such circumstances, Dawn Soergel Raufman argues, the legislature has made it clear that it is she and the child's adoptive father, not the courts, who are to determine whether visitation is in the child's best interests.

██

From the parties' arguments, it is obvious that we are required to determine the effect of the child's stepparent adoption upon the Soergels' right to obtain visitation privileges with the child under sec. 767.245(4), Stats. In order to make this determination, we must construe the visitation and adoption statutes. The construction of a statute is a question of law. This court owes no deference to the decisions of the lower courts with respect to questions of law. *State v. Pham,* 137 Wis. 2d 31, 403 N.W.2d 35 (1987).

The Soergels, as has been stated, seek visitation rights pursuant to sec. 767.245(4), Stats. This court and the court of appeals have previously discussed the history and purpose of this provision. *See, e.g., In re Custody of D.M.M.,* 137 Wis. 2d 375, 404 N.W.2d 530 (1987); *Van Cleve.* Section 767.245(4) was created by Chapter 122, Laws of 1975. When it was created, it was numbered sec. 247.24(1)(c) and provided as follows:

> In rendering a judgment of annulment, divorce or legal separation, the court may:

. . . .

> (c) Grant reasonable visitation privileges to a grandparent of any minor child if the court determines that it is in the best interests and welfare of the child and issue any necessary order to enforce the same.

The legislative history surrounding the enactment of sec. 247.24(1)(c) shows that it was the intent of the legislature merely to codify this court's decisions in *Weichman v. Weichman,* 50 Wis. 2d 731, 184 N.W.2d 882 (1971), and *Ponsford v. Crute,* 56 Wis. 2d 407, 202 N.W.2d 5 (1972):

> The supreme court established in *Weichman v. Weichman,* 50 Wis. 2d 731, 734, 184 N.W.2d 882 (1970)[sic], and reaffirmed in *Ponsford v. Crute,* 56 Wis. 2d 407, 415, 202 N.W.2d 5 (1972), that the court in actions affecting marriage may grant visitation privileges to grandparents and others where it is in the best interest of the child. Therefore, the treatment of s. 247.24(1) in the attached draft is merely a codification of existing law.

Draftsman's Note, Legislative Reference Bureau File, ch. 122, Laws of 1975, LRB–366–1, dated November 7, 1974. Because sec. 767.245(4) is merely a codification of this court's decisions in *Weichman* and *Ponsford,* a brief analysis of those decisions will shed light upon its purpose.

*Weichman* involved an uncontested divorce action. Custody of the one child of the marriage was also uncontested, with custody being granted to the mother. The trial court granted the paternal grandparents visitation rights to the child. *Weichman,* 50 Wis. 2d at 733. This court noted that there was no statutory or common-law rule that prevented courts from granting visitation privi-

leges to parents or others; rather, whether such privileges should be granted depends upon the child's best interests. *Id.* at 734. This court recognized that granting visitation privileges to grandparents or others would lessen the harmful effects a divorce has on a child. *Id.* at 736.

*Ponsford* involved a child custody dispute between the child's natural father and maternal grandparents. In *Ponsford,* the trial court granted custody of the child to the child's father, but refused to grant visitation privileges to the grandparents. *Ponsford,* 56 Wis. 2d at 411. The trial court apparently concluded that it had no authority to provide visitation rights to the grandparents. In light of the holding in *Weichman,* this court stated that the trial court erred in concluding that it had no authority to order grandparent visitation privileges and that such privileges should be granted when it is in the best interests of the child. *Id.* at 415–16.

After examining the history of the visitation privilege statute at issue here, which shows that it was intended to codify this court's decisions in *Weichman* and *Ponsford,* the court of appeals in *Van Cleve* properly defined its purpose and scope. In *Van Cleve,* the grandparents sought visitation privileges with their grandchild where no action affecting the family had been previously filed. The court of appeals determined that the trial court properly dismissed the grandparents' petition because no action affecting the family had been previously filed. The court of appeals concluded that the legislative history of sec. 767.245(4), Stats., showed that it was not the intent of the legislature to override the parents' determination that a relationship with grandparents would not be in the children's best interests where the family unit is intact. The court of appeals construed sec. 767.245(4) as allowing "the state to protect the children's best interests by ordering visitation

with appropriate adults to mitigate the trauma and impact of a dissolving family relationship." *Van Cleve,* 141 Wis. 2d at 549.

Because Dawn Soergel Raufman argues that the Soergels' right to obtain visitation ends after the stepparent adoption, we are also required in this case to construe the adoption statutes. The effect an adoption has on the child's relationship with his or her former and new family is set forth in sec. 48.92(1) and (2), Stats., which provide as follows:

**Effect of adoption. (1)** · After the order of adoption is entered the relation of parent and child and all the rights, duties and other legal consequences of the natural relation of child and parent thereafter exists between the adopted person and the adoptive parents.

**(2)** After the order of adoption is entered the relationship of parent and child between the adopted person and his birth parents, unless the birth parent is the spouse of the adoptive parent, shall be completely altered and all the rights, duties and other legal consequences of the relationship shall cease to exist.

In *Estate of Topel,* 32 Wis. 2d 223, 145 N.W.2d 162 (1966), this court examined the legislative intent of sec. 48.92, Stats. This court noted that subsection (1) of sec. 48.92 declares the rights that flow from the adoptive status. Subsection (1) gives the adopted child the status of a natural child of the adoptive parent or parents. This court further noted that subsection (2) of sec. 48.92 declares what rights of the birth parent status are terminated upon adoption. Subsection (2) terminates the relationship between the adopted person and the birth parent or parents. *Topel,* 32 Wis. 2d at 226–27. This court interpreted sec. 48.92 broadly, concluding that it

effected, without exception, a complete substitution of the adoptive relationship for the natural relationship:

> Modern adoption statutes generally establish a status, the incidents of which are in the nature of a natural relationship of parent and child. There is no exception in the present statute to this complete substitution of adoptive relationship for the natural relationship. *We think the intent of sec. 48.92, Stats., from its language is to effect upon adoption a complete substitution of rights, duties, and other legal consequences of the natural relation of child and parent and kin with those same rights, duties, and legal consequences between the adopted person and the adoptive parents and kin.*

*Id.* at 227 (emphasis added) (citation omitted).

After analyzing the visitation and adoption provisions, we conclude that it was not the intent of the legislature to allow visitation under the circumstances that exist in this case. The history of sec. 767.245(4), Stats., shows the legislature intended to codify this court's decisions in *Weichman* and *Ponsford;* therefore, this provision applies in divorce or custody cases or in other actions affecting the marriage.

The facts of this case place it beyond the purview of sec. 767.245(4), Stats. In this case, the child has been adopted by Keith Raufman, the present husband of the child's natural mother, Dawn Soergel Raufman. According to this court's decision in *Topel,* adoption effects "a complete substitution of rights, duties, and other legal consequences of the natural relation of child and parent and kin with those same rights, duties, and legal consequences between the adopted person and the adoptive parents and kin." *Topel,* 32 Wis. 2d at 227. Adoption

thus has the effect of severing all rights of the adopted child's birth family to the child. Allowing the Soergels to obtain visitation rights to the child under sec. 767.245(4) would be at odds with the adoption statute's purpose of severing all rights of Gary Soergel and his family to the child. *See also In re Adoption of Schumacher,* 120 Ill. App. 3d 50, 458 N.E.2d 94, 98 (1983).

Moreover, under sec. 48.92(1), Stats., Keith Raufman's adoption of the child has established a status between himself and the child that is identical to the status that exists between a natural parent and his or her child. Together, Keith Raufman, as the adoptive father, and Dawn Soergel Raufman, as a birth parent, possess all the rights of the natural relation of parent and child. One of the rights parents have as a result of the natural relation of parent and child is the right to determine whether a relationship with the grandparents, or any other person, is contrary to the child's best interests. *See, e.g., Browning v. Tarwater,* 215 Kan. 501, 524 P.2d 1135, 1139 (1974). Therefore, it is for Dawn Soergel Raufman and Keith Raufman, not the courts, to decide whether visitation with the Soergels is in the child's best interests. Section 767.245(4), Stats., was not intended to interfere with such decisions. *Cf. Van Cleve,* 141 Wis. 2d at 549.

We therefore conclude that the Soergels have no right to visitation privileges under sec. 767.245(4), Stats.

*By the Court.*—The order of the circuit court is affirmed.

CHIEF JUSTICE NATHAN S. HEFFERNAN did not participate.

LOUIS J. CECI, J. (concurring).  The sad result of this case is that loving grandparents have effectively become "nonpersons" as a consequence of the law involved in this case. Unfortunately, this result is required by the facts of this case and the language of secs. 48.92(1) and (2) and 767.245, Stats. The obvious intent of the legislature in enacting the "grandparents' rights" section of the statutes, sec. 767.245, is stifled when that section is read with sec. 48.92(1) and (2).

Perhaps the legislature will see the need to revise these sections of the statutes.

I am authorized to state that Justice Roland B. Day joins in this concurring opinion.