In the MATTER OF the GRANDPARENTAL VISITATION OF David ROGERS and Emily Rogers:

Eugene F. ROGERS and Doris J. Rogers, Petitioners-Appellants,

v.

Mary Jo ROGERS, n/k/a Mary Jo Ryan, and Eugene M. Rogers, Respondents.

Court of Appeals

*No. 2006AP1766. Submitted on briefs January 26, 2007. —Decided February 21, 2007.*

2007 WI App 50

(Also reported in 731 N.W.2d 347.)

On behalf of the petitioners-appellants, the cause was submitted on the briefs of *Terry W. Rose*, of *Rose & Rose*, of Kenosha.

On behalf of the respondent, Mary Jo Rogers, n/k/a Mary Jo Ryan, the cause was submitted on the brief of *Wendy S. Paul*, of Racine.

A guardian ad litem brief was filed by *Mark Lukoff*, of *Law Office of Mark Lukoff, S.C.*, of Racine.

Before Brown, Nettesheim and Anderson, JJ.

¶ 1. NETTESHEIM, J. In this appeal, we review the circuit court's interpretation and application of WIS. STAT. § 767.245 (2003–04), the grandparent visitation statute.[1] The grandparents, Eugene F. and Doris J. Rogers, appeal from an order denying their petition seeking the entry of a formal order directing visitation with their grandchildren. We hold that the grandpar-

---

[1] The grandparents filed their WIS. STAT. § 767.245 motion on January 10, 2006. Effective January 1, 2007, § 767.245 was renumbered to WIS. STAT. § 767.43. 2005 Wis. Act 443, §§ 101, 267 (eff. Jan. 1, 2007). Section 767.245, now § 767.43, is not limited to grandparents, but also covers a "greatgrandparent, stepparent or person who has maintained a relationship similar to a parent-child relationship with the child."

All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

ents did not rebut the presumption that the decision of the mother, a fit parent with primary placement, regarding the existing visitation sufficiently served the best interests of the children. Therefore, we agree with the circuit court that state interference with the mother's decision was not justified. However, we reject the mother's claim that the grandparents' appeal is frivolous.

## BACKGROUND

¶ 2. The material facts are undisputed. Eugene M. Rogers and Mary Jo Rogers, n/k/a Mary Jo Ryan, divorced in 2005. The parties have two minor children, David and Emily. The marital settlement agreement, incorporated by reference into the judgment of divorce, recited that both parents were fit and proper persons to have legal custody of the children. The judgment ordered joint custody with primary placement to Mary Jo. Eugene had secondary placement, essentially consisting of every other weekend, a week in summer and an every-other-year holiday rotation.[2]

¶ 3. The grandparents are David's and Emily's paternal grandparents. In 2003, David and Emily lived with the grandparents for nine months, at the grandparents' expense, while the family relocated from Missouri to Wisconsin. When David and Emily resumed living with their parents, the grandparents saw the children several times a month. After the divorce, Mary Jo permitted the grandparents to continue to see the

---

[2] Eugene, although named as a respondent on appeal, has not filed a brief and has not taken a substantive position on the issue before us. In the trial court, he stated only that any grandparent visitation should not be charged against his secondary placement time with the children. Therefore, this case pits the grandparents against Mary Jo, the mother.

children at their school events and to take them out for meals, but overnight visitation fell off. Mary Jo offered weekday time when the children were off school, which the grandparents always accepted. The grandparents did not consider nonovernight visits "placement," however.

¶ 4. The grandparents moved for a visitation order pursuant to Wis. Stat. § 767.245. At the hearing on the motion, the grandfather testified that they wanted regularly scheduled visitation with the children for one weekend a month and a week in the summer. They also wanted the weekend visits carved from Mary Jo's placement because the children lived with her during the week resulting in an estimated 85%/15% split between Mary Jo and the dad. The grandparents never asked their son if they could have the children with them during his time. Mary Jo agreed that the relationship between David and Emily and their grandparents was positive and in the children's best interest to maintain.

¶ 5. John Engel, the family court worker appointed to evaluate the grandparents' position on scheduled visitation, interviewed the parents, the grandparents and the children. Engel opined that a grandparent visitation order was unnecessary because Mary Jo was not impeding the grandparents' relationship with the children. The court-appointed guardian ad litem agreed because, while the grandparents preferred more or longer visits, Mary Jo had not denied them involvement in the children's lives, and the court should not interfere with Mary Jo's parental decision making.

¶ 6. The circuit court took the matter under advisement. In its written decision, the court observed that the disparate placement schedule between Eugene and Mary Jo was a result of the children living with Mary Jo during the school year. The court found that

the grandparents had a parent-like relationship with the children stemming from having fully cared for them in 2003 and that the divorce was the mechanism triggering the WIS. STAT. ch. 767 visitation statutes. The court also found that the contact Mary Jo had already fostered between the children and their grandparents was sufficient to maintain the existing good relationship. The court concluded that since Mary Jo had not denied visitation with the grandparents, there was no basis or need for a visitation order. The grandparents appeal.

## STANDARD OF REVIEW

¶ 7.  Whether to grant or deny grandparent visitation is within the circuit court's discretion. *Roger D.H. v. Virginia O.*, 2002 WI App 35, ¶ 9, 250 Wis. 2d 747, 641 N.W.2d 440. We will affirm if the circuit court examined the relevant facts, applied the proper legal standard and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Id.* When a party alleges an erroneous exercise of discretion because the circuit court applied an incorrect legal standard, we review that issue de novo and affirm if we can independently conclude that the facts of record applied to the proper legal standards support the court's decision. *Id.* In addition, this case in part raises a question of the construction of WIS. STAT. § 767.245, a question of law that we review de novo. *Marquardt v. Hegemann-Glascock*, 190 Wis. 2d 447, 451, 526 N.W.2d 834 (Ct. App. 1994).

## DISCUSSION

¶ 8.  The grandparents sought a visitation order pursuant to WIS. STAT. § 767.245. They concede that

Mary Jo does not oppose and, in fact, allows ongoing visitation. But they object to its haphazardness, as they describe it, and want the arrangement formalized by court order. They also want the visitation time allotted to them taken from Mary Jo's placement schedule because the children are with her more than they are with their father, the grandparents' son. The circuit court denied the grandparents' petition, ruling that Mary Jo's decision regarding the existing visitation arrangement sufficiently served the children's best interests and was entitled to constitutional deference. The grandparents ask that we reverse the order denying their petition and remand with instructions to order visitation.

¶ 9.   WISCONSIN STAT. § 767.245 provides in relevant part:

**767.245 Visitation rights of certain persons. (1)** Except as provided in subs. (1m) and (2m), upon petition by a grandparent, greatgrandparent, stepparent or person who has maintained a relationship similar to a parent-child relationship with the child, the court may grant reasonable visitation rights to that person if the parents have notice of the hearing and if the court determines that visitation is in the best interest of the child.

¶ 10.   The circuit court ruled:

Absent a denial of placement by one or both of the parents there is no basis upon which this Court should create a time for placement with the grandparents notwithstanding [that] the elements and facts of this case place them in a position to request such a placement.

¶ 11.   The grandparents correctly state that WIS. STAT. § 767.245 requires that three conditions must be

satisfied before a circuit court may grant visitation: (1) the grandparents must have a parent-like relationship with the child, (2) the parents must have notice of the hearing, and (3) the court must determine that grandparent visitation is in the child's best interest. The grandparents read the circuit court's ruling to say that a court cannot order grandparental placement unless visitation is denied, and they protest that the statute does not impose that requirement. They suggest that once the three statutory conditions are met, the petition must be granted, and the court erred by fashioning a new requirement.

¶ 12. The grandparents overread the circuit court's holding and misconstrue the controlling law. First, the statute's stated conditions do not guarantee that a visitation order will issue where the statutory elements are satisfied. To the contrary, the decision clearly remains within the court's discretion even where the statutory elements are met. *Id.* ("the court *may* grant reasonable visitation rights" to the petitioner) (emphasis added). Second, as we will explain later, the grandparents did not satisfy the "best interest of the child" element of the statute. Finally, the court's pronouncement is not as broad as the grandparents suggest. The court did not say, as a matter of law, that a parent's allowance of any degree of grandparent visitation bars a visitation order. To the contrary, the court spoke to "the elements and facts of this case," saying there was "no basis upon which this Court should," not could, order placement.

¶ 13. In a related argument, the grandparents contend that the circuit court wrongly held that parental denial of placement was the "triggering event" for the entry of a visitation order. In support, the grand-

parents rely on *Holtzman v. Knott*, 193 Wis. 2d 649, 533 N.W.2d 419 (1995), where the supreme court examined the relevant statues governing nonparent visitation and concluded:

> This recitation of the history of the three visitation statutes illustrates the continuing legislative concern with identifying the triggering events that warrant state interference in an otherwise protected parent-child relationship. As we have seen, the triggering event most often manifest in the history of the ch. 767 visitation statute (and the case law interpreting it) has been the dissolution of a marriage, that is, an annulment, divorce or separation.

*Holtzman*, 193 Wis. 2d at 674. We disagree with the grandparents that the court held that the "triggering event" for the entry of a visitation order was the denial of placement by a parent. To the contrary, the court expressly said that the triggering mechanism was the parents' divorce.

¶ 14. Moreover, we question the relevance of *Holtzman* to this case. While *Holtzman* is an important nonparent visitation case, it is not a grandparent visitation case and the supreme court's only reference to WIS. STAT. § 767.245 was to explain why the statute did not apply.[3] The issue in *Holtzman* was whether the nonbiological-parent partner in a dissolved same-sex

---

[3] In *Holtzman v. Knott*, 193 Wis. 2d 649, 667, 533 N.W.2d 419 (1995), the supreme court held that WIS. STAT. § 767.245 did not apply because there was no underlying action for dissolution of the marriage. Instead, the parties were the natural mother and a nonbiological partner in a same-sex relationship. In the instant case there is an underlying actionthe divorce between Eugene and Mary Jowhich served as the "triggering mechanism" for the grandparents' petition for visitation.

relationship could seek visitation rights to her ex-partner's biological child. *Holtzman*, 192 Wis. 2d at 657, 659–61.

■

¶ 15. Even if we allow that *Holtzman* is relevant to this case, it supports the circuit court's ruling. *Holtzman* held that a circuit court *may* determine whether nonparent visitation is in a child's best interest *after* the petitioner proves that (1) he or she has a parent-like relationship with the child and (2) a "significant triggering event" justifies state intervention in the child's relationship with the parent. *Id.* at 658. Here, the circuit court followed a similar analysis. The court found that the grandparents have a parent-like relationship with their grandchildren and that the divorce was the triggering mechanism. With those threshold findings in place, the court then moved to the ultimate question of whether the court should, in the exercise of its discretion, choose to enter a visitation order.

■

¶ 16. The grandparents also argue that the circuit court failed to consider the children's best interests. We disagree. The court expressly stated that the determinative issue was "whether creating a separate placement time for the grandparents is in the best interests of the children under the circumstances of this case." The court then made several findings implicating that consideration: (1) the best interests of the children did not require a visitation order because of Mary Jo's willingness to allow the grandparents continued participation in the children's lives through mid-week visits, (2) Mary Jo had not deprived the grandparents of contact with the children, (3) the grandparents continue to enjoy considerable contact with the children,

and (4) it was not in the best interests of the children to have the requested grandparent visitation carved out of Mary Jo's parental placement time. These reasons well support the court's discretionary ruling.

¶ 17.  We also disagree with the grandparents' assertion that the circuit court did not take into consideration the children's wishes. *See* Wis. Stat. § 767.245(2) ("Whenever possible, in making a determination under sub. (1), the court shall consider the wishes of the child."). The court evaluator interviewed the children and testified that they want a normal relationship with their grandparents. The court's written decision expressly invokes with approval the evaluator's findings and conclusions. Mary Jo herself agreed that the relationship between her children and their grandparents was positive, and the court's decision notes Mary Jo's "willingness to allow the grandparents to continue participating in the children's lives . . . ." We conclude that the court's decision reflects proper consideration of the children's wishes to continue to see their paternal grandparents and proper deference to visitation parameters set by the children's mother.

¶ 18.  Parents have a liberty interest in directing the care, custody and control of their children. *Troxel v. Granville*, 530 U.S. 57, 65 (2000). The Due Process Clause does not permit a state to infringe on a fit parent's fundamental right to make child-rearing decisions simply because a court disagrees with the parent or believes a better decision could be made. *Id.* at 72–73.

¶ 19.  *Troxel* is instructive. There, pursuant to a broadly drawn state statute, paternal grandparents petitioned for specified visitation rights to their deceased son's children. *Id.* at 60. The mother did not

oppose visitation per se, only the amount the grandparents requested. *Id.* at 61. The circuit court granted more visitation than the mother wanted. *Id.* On grant of certiorari, the United States Supreme Court held that the fit, custodial parent's due process right to make decisions concerning the care, custody, and control of her children was violated by the state court's application of the statute to order visitation with the grandparents against the mother's wishes, without giving her wishes special weight, and when the mother already permitted visitation. *Id.* at 68–71. If a fit parent's decision regarding grandparent visitation becomes subject to judicial review, the circuit court must give "special weight" to the parent's own determination as to his or her children's best interests. *See id.* at 68–69.

¶ 20. In *Roger D.H.*, we drew from *Troxel* two lessons with regard to Wis. Stat. § 767.245: first, that due process requires courts to presume that a fit parent's decision regarding nonparental visitation is in the child's best interest and, second, that we may read this requirement into a nonparental visitation statute even when the statute is silent on the topic. *Roger D.H.*, 250 Wis. 2d 747, ¶¶ 18–19.

¶ 21. Here, the grandparents see the children at their school and sporting activities, take them out for meals and also sometimes see the children during the week when they are off school. The guardian ad litem and the court evaluator both advised against formalizing placement because the best interests of the children did not require it. The circuit court agreed that a continued relationship with the grandparents was in the children's best interest, but noted that Mary Jo already permits "considerable contact with [Eugene's and Doris'] grandchildren, albeit not as much as they desire." We construe the grandparents' desire to secure

a more generous and predictable visitation schedule as falling into the category of fashioning a "better" arrangement. But that is not enough to overcome the presumption that Mary Jo's visitation decisions are in her children's best interests and thus bar state intervention. We agree with the circuit court that the informal arrangement is sufficient to maintain the established relationship and that state interference in the form of court-ordered placement with the grandparents is unwarranted.

## MOTION FOR FRIVOLOUS COSTS

¶ 22. Mary Jo contends that the grandparents' appeal is frivolous and seeks costs pursuant to WIS. STAT. RULE 809.25(3). She asserts that the grandparents ignored relevant law such as *Roger D.H.* and *Troxel*, relied on inapplicable law, and advanced no argument for an extension, modification or reversal of existing law.

¶ 23. We decide as a matter of law whether an appeal is frivolous. *J.J. Andrews, Inc. v. Midland*, 164 Wis. 2d 215, 225, 474 N.W.2d 756 (Ct. App. 1991). The test is whether the appeal either was filed in bad faith for the sole purpose of harassing or maliciously injuring another, or the party or party's attorney knew or should have known that the appeal was without any basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law. WIS. STAT. RULE 809.25(3)(c)1., 2.

¶ 24. We hold that the grandparents' appeal is not frivolous. The circuit court found that the grandparents have a parent-like relationship sufficient to withstand a

motion to dismiss. True, the grandparents' argument based on *Holtzman* does not carry the day for them, but we do not go so far as to say it was without basis in law or equity. Moreover, their reply brief addresses and attempts to distinguish *Roger D.H.* and *Troxel* based on the particular statutory subsection at issue and the strength of the presumption to be accorded a parent's decisions. They made a defensible, albeit unsuccessful, argument in support of their petition for placement. Nothing suggests the appeal was filed in bad faith. The motion for costs and fees is denied.

## CONCLUSION

¶ 25.   Situations posed by cases like this never are easy, and we, like the circuit court, do not take our task lightly. The question is not whether the additional time sought by the grandparents with their grandchildren might be "good" for all concerned. We assume it is. Rather, the questions are whether, *under the facts of this particular case,* the state should intervene to dictate to Mary Jo, the parent with primary placement, that such added visitation time is warranted, and, if so, which parent should forfeit a portion of his or her placement time to accommodate the grandparent visitation. The facts of this case demonstrate no need for such state intervention against Mary Jo's due process rights to make decisions concerning the care, custody and control of her children. We uphold the circuit court's exercise of discretion denying the grandparent's petition for a visitation order, but deny Mary Jo's motion for frivolous costs and fees.

*By the Court.*—Order affirmed.