BLANCHARD, J.[1]
¶1 C.H.B. appeals the circuit court's orders terminating his parental rights to his three children pursuant to WIS. STAT. § 48.415(4) on the petition of S.M.G., C.H.B.'s ex-spouse and the children's mother. C.H.B. makes a single argument, which is a facial challenge to the constitutionality of § 48.415(4).[2] Section 48.415(4) allows the termination of parental rights based on the continuing denial of physical placement or visitation. C.H.B. argues that this provision on its face violates the equal protection clause of the United States and Wisconsin Constitutions because it requires petitioners to prove, as to one class of respondent parents, that such parents were previously provided with warnings of the potential for termination of their parent rights, but does not require petitioners to prove this when seeking to terminate the rights of another class of respondent parents who C.H.B. contends are similarly situated to the first set of parents.
¶2 Based on the arguments presented, I conclude that C.H.B. has not met his burden to show beyond a reasonable doubt that WIS. STAT. § 48.415(4) is facially unconstitutional. At a minimum, he fails to adequately address differences between the two classes of respondent parents, which raises doubt about his constitutional challenge. Accordingly, I affirm.
BACKGROUND
¶3 In June 2017, S.M.G. filed petitions to terminate C.H.B.'s parental rights to their three children, H.M.G., N.R.B., and H.L.B.[3] The petitions sought termination based on multiple statutory grounds, including under WIS. STAT. § 48.415(4).[4] As pertinent to C.H.B.'s circumstances and the argument he makes on appeal, § 48.415(4) provides a ground for the termination of parental rights when the petitioner proves the following: (1) the respondent parent "has been denied periods of physical placement by court order in an action affecting the family," § 48.415(4)(a) ; and (2) at least one year has elapsed since the order denying physical placement was issued, during which time the order was not modified to permit physical placement, § 48.415(4)(b).
¶4 S.M.G. moved for partial summary judgment as to all three children solely on the ground of continuing denial of physical placement or visitation under WIS. STAT. § 48.415(4). C.H.B. acknowledged that, through a temporary order and a subsequent final family court order, he had been denied physical placement of the children for more than one year. However, in an argument that he does not now renew on appeal, C.H.B. opposed S.M.G.'s motion on the ground that procedural due process required that the challenge to his fitness as a parent be tried to a jury rather than decided based on a dispositive motion under the standards in § 48.415(4).
¶5 In support of this argument, C.H.B. further contended that the family court that had denied him physical placement had failed to accomplish what C.H.B. submitted was the court's obligation, namely, to warn him of the risk that his parental rights might be terminated if he failed to obtain a modification, within one year, of the order denying him physical placement of the children. C.H.B. contended that the court had warned C.H.B. improperly, by using an oral, not a written, warning that was allegedly incomplete because it did not inform C.H.B. how to avoid the termination of his rights. C.H.B. conceded that the court was not obligated by any statute or case law to give him such a warning, but argued that the failure to warn contributed to the violation of his constitutional right to procedural due process.
¶6 The circuit court granted partial summary judgment, finding C.H.B. to be unfit as a parent, resolving the first phase of the proceedings. The court rejected C.H.B.'s procedural due process argument. The court noted that our supreme court has upheld the constitutionality of a court using summary judgment to establish the unfitness of a parent, including based on "paper grounds" such as WIS. STAT. § 48.415(4). See Steven V. v. Kelley H. , 2004 WI 47, ¶¶37-44, 271 Wis. 2d 1, 678 N.W.2d 856. The court further observed that C.H.B. not only received the amount of process afforded by the termination of parental rights proceedings, but received additional process through the earlier family court proceedings.
¶7 Following a contested dispositional hearing, the details of which do not matter to the issue raised on appeal, the court determined that it was in the best interests of the children to terminate C.H.B.'s parental rights with respect to each child and entered final orders to that effect.
¶8 C.H.B. appeals the orders terminating his parental rights, raising a new argument on appeal.[5] The guardian ad litem who was appointed for all three children by the circuit court joins S.M.G. in requesting that I affirm the termination of C.H.B.'s parental rights. C.H.B. does not renew on appeal his argument before the circuit court that WIS. STAT. § 48.415(4) violates the due process clauses of the U.S. and Wisconsin constitutions.
¶9 I express no view in this opinion on the merits of any potential substantive or procedural due process challenges that could be raised in this context, nor any view on the merits of any potential "as applied" constitutional challenges.
DISCUSSION
¶10 C.H.B.'s single argument on appeal is that WIS. STAT. § 48.415(4) always treats two classes of respondent parents in a manner that violates the rights of one class to equal protection under the federal and state constitutions.[6] Specifically, C.H.B. argues that § 48.415(4) on its face violates the equal protection clause because it requires petitioners to prove, as to one class of respondent parents, that such parents were previously provided with warnings of the potential for termination of their parent rights, but omits that requirement of proof for petitioners seeking to terminate the rights of the other class of respondent parents. Applying rational basis review, I disagree that C.H.B. has made this showing beyond a reasonable doubt.
¶11 What follows is: (1) an overview of WIS. STAT. § 48.415(4) and closely related statutes as they relate to C.H.B.'s equal protection argument; (2) the standard of review and the burden C.H.B. takes on in making a facial challenge to § 48.415(4) 's constitutionality; (3) the standards applicable to equal protection-based challenges in particular, including my determination that C.H.B.'s equal protection claim calls for rational basis scrutiny of § 48.415(4) ; and (4) application of these standards to C.H.B.'s challenge of § 48.415(4), explaining my conclusion that C.H.B. fails to meet his burden to show beyond a reasonable doubt that the statute is unconstitutional.
The Statutes
¶12 WISCONSIN STAT. § 48.415(4) describes one overarching basis for establishing a ground for termination of parental rights, broken down into multiple alternative routes. The parent must have been the subject of "[c]ontinuing denial of periods of physical placement or visitation, which shall be established by proving all of the following:"
(a) That the parent has been denied periods of physical placement by court order in an action affecting the family or has been denied visitation under an order under s. 48.345, 48.363, 48.365, 938.345, 938.363 or 938.365 containing the notice required by s. 48.356(2) or 938.356(2).
(b) That at least one year has elapsed since the order denying periods of physical placement or visitation was issued and the court has not subsequently modified its order so as to permit periods of physical placement or visitation.
Section 48.415(4).
¶13 The two major alternative routes under WIS. STAT. § 48.415(4) are found in paragraph (a). Paragraph (a) defines two groups of continuing orders and, accordingly, creates two categories of parents affected by the two groups of orders: (1) family court orders that deny parents physical placement (I will sometimes use the shorthand "family court orders" to refer to this category), and (2) Children's Code or Juvenile Justice Code orders that deny parents visitation pursuant to WIS. STAT. §§ 48.345, 48.363, 48.365, 938.345, 938.363 or 938.365 (I will sometimes use the shorthand "juvenile court orders" for this category). See Kimberly S.S. v. Sebastian X.L. , 2005 WI App 83, ¶7, 281 Wis. 2d 261, 697 N.W.2d 476 ("[T]he first usage of 'or' in § 48.415(4)(a) separates the paragraph into two self-contained clauses, one pertaining to family court orders and the other applicable to juvenile court orders."). These two categories of parents-those denied physical placement by family court orders and those denied visitation by juvenile court orders-are the classes identified by C.H.B.
¶14 With that statutory background, C.H.B. contends that WIS. STAT. § 48.415(4)(a) effectively discriminates against one class of parents by relieving the petitioners in their cases of the obligation to produce proof that a particular kind of notice or warning had been given, which I now explain. This involves the following phrase from § 48.415(4)(a) : "containing the notice required by s. 48.356(2) or 938.356(2)."
¶15 In pertinent part, WIS. STAT. § 48.356 (entitled "[d]uty of court to warn") requires that a juvenile court provide a specified warning to a parent to whom the court denies "visitation because [the parent's] child ... has been adjudged to be in need of protection or services under s. 48.345, ... 48.363, or 48.365." Sec. 48.356(1). This juvenile court warning must inform the parent "of any grounds for termination of parental rights under s. 48.415 [, including subsection (4) of that statute,] which may be applicable and of the conditions necessary ... for the parent to be granted visitation." Id. The warning must be provided orally to any parent appearing in court at the pertinent proceeding, § 48.356(1), and also must be included in any written order denying visitation, § 48.356(2). WISCONSIN STAT. § 938.356 requires the court to give an equivalent oral and written warning whenever it denies parents visitation to a juvenile under WIS. STAT. §§ 938.34, 938.345, 938.357, 938.363 or 938.365.
¶16 C.H.B.'s challenge arises from a determination of this court that WIS. STAT. § 48.415(4) does not require proof that the warning had been given to those parents subject to family court orders , but does require proof that the warning had been given to the parents subject to juvenile court orders . See Kimberly S.S. , 281 Wis. 2d 261, ¶7. C.H.B. argues that WIS. STAT. § 48.415(4) 's failure to require proof of a prior warning described in WIS. STAT. § 48.356(2) for both classes of parents affected by § 48.415(4) on its face violates the equal protection clause. In C.H.B.'s view, there is no justification, or insufficient justification, for the legislature to make it easier in this way to terminate the rights of parents affected by family court orders than it is to terminate the rights of parents affected by juvenile court orders.
Legal Standards
A. Standard of Review; As Applied Versus Facial Challenge
¶17 Courts presume that a statute challenged on constitutional grounds is constitutional, and the challenger bears the burden of showing that the statute is unconstitutional beyond a reasonable doubt. Mayo v. Wisconsin Injured Patients and Families Comp. Fund , 2018 WI 78, ¶¶25, 27, 383 Wis. 2d 1, 914 N.W.2d 678.
¶18 In general terms, there are two types of constitutional challenges to statutes: facial and as-applied. Id. , 24. C.H.B. explicitly makes an exclusive facial challenge to the constitutionality of WIS. STAT. § 48.415(4), and disavows that he is making an as applied challenge, which would focus narrowly on its application to him. See Tammy W-G. v. Jacob T. , 2011 WI 30, ¶49, 333 Wis. 2d 273, 797 N.W.2d 854. Therefore, to prevail he must show that it is unconstitutional in all of its applications. See Mayo , 383 Wis. 2d 1 ¶¶24, 33. If C.H.B. succeeds, § 48.415(4) would be "void for all purposes." See Blake v. Jossart , 2016 WI 57, ¶26, 370 Wis. 2d 1, 884 N.W.2d 484.
B. Equal Protection Standards; Appropriate Level Of Scrutiny
¶19 " 'The equal protection clause requires that the legislature have reasonable and practical grounds for the classifications that it draws.' " State v. Smith , 2010 WI 16, ¶15, 323 Wis. 2d 377, 780 N.W.2d 90 (quoted source omitted).
¶20 Determining whether a statute violates the equal protection clause requires answering three questions: (1) does the statute create a distinct classification of citizens?; (2) does the statute treat the distinct class in a significantly different manner from those outside the class?; and (3) is the distinction made relevant to the purpose for which the classification is made? See Metropolitan Assoc. v. City of Milwaukee , 2011 WI 20, ¶22, 332 Wis. 2d 85, 796 N.W.2d 717 ; see also Blake , 370 Wis. 2d 1, ¶30 (" 'The right to equal protection does not require that such similarly situated classes be treated identically, but rather requires that the distinction made in treatment have some relevance to the purpose for which classification of the classes is made.' ") (quoted source omitted).
¶21 There is no dispute that the answer here is yes to both of the first two questions. WISCONSIN STAT. § 48.415(4) creates a distinct class of parents, those whose parental rights are terminated based on continuing denials of physical placement in family court, and those who denied visitation under various provisions of the children's and juvenile codes. As explained above, these distinct classes are treated in a significantly different manner, in that § 48.415(4)(a) does not require proof that a warning had been given to parents denied physical placement through a family court order, but expressly requires that a petitioner provide proof that a warning had been given to the parent under WIS. STAT. § 48.356(2) only for those parents denied visitation in a juvenile court order.
¶22 The third equal protection question, whether this proof-of-prior-warning distinction is relevant to the statute's purpose, is generally answered using one of two levels of scrutiny: strict scrutiny or rational basis review. The Wisconsin Supreme Court has summarized the differences between rational basis and strict scrutiny standards as follows:
Strict scrutiny is applied to statutes that restrict a fundamental right. Strict scrutiny is also applied to the regulation of protected classes. When strict scrutiny is applied, the statute must serve a compelling state interest; the statute must be necessary to serving that interest; and the statute must be narrowly tailored toward furthering that compelling state interest....
The more common level of statutory scrutiny is rational basis scrutiny, where statutes are upheld if there is any rational basis for the legislation. "The basic test is not whether some inequality results from the classification, but whether there exists any reasonable basis to justify the classification."
Mayo , 383 Wis. 2d 1, ¶¶28-29 (citations omitted). The parties contest which of these levels of scrutiny applies to C.H.B.'s facial equal protection challenge to WIS. STAT. § 48.415(4).
¶23 C.H.B. argues that strict judicial scrutiny is required because WIS. STAT. § 48.415(4) infringes upon parental rights, which he contends are fundamental rights. See State v. Allen M. , 214 Wis. 2d 302, 318, 571 N.W.2d 872 (Ct. App. 1997) ("Because courts have long recognized the right to parent one's children as fundamental, a statutory classification that significantly interferes with this right must be examined under strict judicial scrutiny.") (citation omitted).
¶24 S.M.G. and the guardian ad litem argue for rational basis review based on three premises and a conclusion that they argue follows from the premises. C.H.B. does not contest any of the three premises. C.H.B. does, however, dispute that the conclusion follows from the premises. I now describe the premises and conclusion relied on by S.M.G. and the guardian ad litem, and C.H.B.'s response.
¶25 Undisputed premise 1: Parental rights are not always considered fundamental rights for purposes of constitutional analysis. Under precedent of our supreme court and the United States Supreme Court, a parent does not enjoy a fundamental right to parent his or her child when the parent has not taken steps to establish a relationship with the child, or has failed to accept responsibility for the child's wellbeing. See Tammy W-G. , 333 Wis. 2d 273, ¶61 ("[W]hen a parent has not taken advantage of the opportunity to develop a relationship with his offspring and accept responsibility for the child's future, no liberty interest protected by substantive due process arises."); Ann M.M. v. Rob S. , 176 Wis. 2d 673, 686, 500 N.W.2d 649 (1993) ; see also Troxel v. Granville , 530 U.S. 57, 88 (2000) ("A parent's rights with respect to her child have thus never been regarded as absolute, but rather are limited by the existence of an actual, developed relationship with a child, and are tied to the presence or absence of some embodiment of family.").
¶26 Undisputed premise 2: WISCONSIN STAT. § 48.415(4) applies to both those parents who have established fundamental parental rights because they have established a relationship with or taken responsibility for their children, and to those parents who have not. There is no dispute that both family court orders and juvenile court orders can lead to termination of parental rights for both sets of parents. Therefore, § 48.415(4) affects some parents who lack a fundamental right to parent their children.
¶27 Undisputed premise 3: C.H.B. brings an exclusively facial constitutional challenge, which as noted above requires that he show that WIS. STAT. § 48.415(4) has no constitutional application under any circumstance.
¶28 S.M.G. and the guardian ad litem argue that it follows from these premises that rational basis review applies here, because WIS. STAT. § 48.415(4) is at least sometimes applied in circumstances where fundamental rights are not affected. Therefore, they argue, by making a facial challenge to § 48.415(4), C.H.B. has taken on the burden of showing that § 48.415(4) is unconstitutional in circumstances in which it infringes on parental rights that do not implicate fundamental rights.
¶29 In response, C.H.B. fails to come to grips with the fact that he brings an exclusive facial challenge to the statute, not an as-applied challenge. He asserts that the inclusion of parents who do not have fundamental rights among those affected by WIS. STAT. § 48.415(4) should not deprive those parents who do have fundamental parental rights of heightened protection. He notes that, unlike some parents litigating parental rights cases, there is no dispute that C.H.B. himself has established a relationship with his children giving him fundamental rights. These assertions are off topic because he makes a facial challenge.
¶30 C.H.B. also argues that S.M.G. and the guardian ad litem provide no support for their conclusion. However, C.H.B. provides no support for the opposite conclusion that strict scrutiny should apply to a facial challenge of a statute that implicates both fundamental and nonfundamental rights.[7] Instead, given C.H.B.'s concessions regarding the above-described premises, I agree with S.M.G. and the guardian ad litem that C.H.B.'s burden to show that WIS. STAT. § 48.415(4) is unconstitutional in all circumstances includes situations where no fundamental right is implicated and that, therefore, rational basis review applies.
¶31 C.H.B. protests that this means that strict scrutiny can never be applied to equal protection challenges of statutes governing termination of parental rights because those statutes always apply to at least some parents who have failed to establish a relationship with their children or taken responsibility for their care. Assuming without deciding that C.H.B. is correct that all possible facial challenges to any of these statutes must be subject to rational basis review, this possibility should not come as a surprise. Our supreme court has stressed that the scope of a parent's rights, and therefore the constitutional scrutiny those rights engender, typically depend on the specific facts regarding the parent at issue. See Tammy W-G. , 333 Wis. 2d 273, ¶¶52-61.
¶32 In sum, I determine that rational basis review applies to C.H.B.'s facial constitutional challenge.
Application of Rational Basis
¶33 The following are the guiding principles:
Under rational basis analysis, a statute is unconstitutional if the legislature applied an irrational or arbitrary classification when enacting the provision. Therefore, the court will uphold a statute unless "it is 'patently arbitrary' and bears no rational relationship to a legitimate government interest." Though classifications may be imperfect and might create inequities, the court seeks to determine whether a classification rationally advances a legislative objective. To do so, the court must identify or, if necessary, construct a rationale supporting the legislature's determination. "Once the court identifies a rational basis for a statute, the court must assume the legislature passed the act on that basis ...."
A legislative classification satisfies the rational basis standard if it meets the following five criteria:
(1) All classification[s] must be based upon substantial distinctions which make one class really different from another.
(2) The classification adopted must be germane to the purpose of the law.
(3) The classification must not be based upon existing circumstances only. [It must not be so constituted as to preclude addition to the numbers included within a class.]
(4) To whatever class a law may apply, it must apply equally to each member thereof.
(5) That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.
Jossart , 370 Wis. 2d 1, ¶¶32-33 (citations omitted, modifications in original).
¶34 C.H.B. challenges the second and fifth criteria. To that end, he makes two arguments regarding WIS. STAT. § 48.415(4) 's proof-of-prior-warning distinction between family court orders and juvenile court orders: (1) that the distinction is not germane to the statute's purpose, and (2) that the denial of physical placement in family court is not sufficiently different from the denial of visitation in juvenile court to reasonably suggest at least the propriety of § 48.415(4) 's distinction between those two classes of parents.[8]
¶35 The purposes of WIS. STAT. § 48.415(4), as part of the larger framework of WIS. STAT. chapter 48, are articulated in WIS. STAT. § 48.01(1). Section 48.01 states that chapter 48 "shall be liberally construed to effectuate" several expressly enumerated legislative purposes. One purpose is "[t]o allow for the termination of parental rights at the earliest possible time after rehabilitation and reunification efforts are discontinued in accordance with this chapter and termination of parental rights is in the best interest of the child." WIS. STAT. § 48.01(1)(gr). Similarly, the legislature
recognized that, under certain circumstances, in order to ensure that the needs of a child ... are provided for, the court may determine that it is in the best interests of the child for the child to be removed from his or her parents, consistent with any applicable law relating to the rights of parents.
Section 48.01(1)(ag).
¶36 These express purposes underlying the procedures of WIS. STAT. ch. 48 indicate that the legislature has prioritized the efficient accomplishment of the termination of parental rights in appropriate cases. The issue, then, is whether the proof-of-prior-warning distinction between parents denied physical placement and parents denied visitation is germane to these purposes. With those purposes in mind, I conclude that differences between the circumstances in which family court orders and juvenile court orders are issued and enforced create a reasonable doubt as to whether the proof-of-prior-warning distinction violates the equal protection clause.
¶37 Those subject to family court orders-that is, those denied physical placement under the pertinent family law statutes-are defined in a qualitatively different manner from those subject to juvenile court orders, the parents denied visitation under WIS. STAT. §§ 48.345, 48.363, 48.365, 938.345, 938.363 and 938.365. This difference casts doubt on C.H.B.'s constitutional challenge to the proof-of-prior-warning distinction between the two classes of parents in WIS. STAT. § 48.415(4)(a).
¶38 Taking the pertinent children's code statutes allowing for the denial of visitation as an example, see, e.g. , WIS. STAT. § 48.345, visitation is only denied after a circuit court has determined that a child is in need of protection or services (CHIPS). WIS. STAT. § 48.345(1), (3) ; see also Dane County DHS v. P.P. , 2005 WI 32, ¶31, 279 Wis. 2d 169, 694 N.W.2d 344 ("Because an out-of-home placement of the children was ordered, the issue of parental visitation arose."). A CHIPS finding can be based on one of fifteen distinct statutory grounds, enumerated in WIS. STAT. § 48.13. These grounds range widely, including, for example, the hospitalization, institutionalization, or incarceration of the parent. Sec. 48.13(8).
¶39 In contrast, a court in a family action may deny a parent physical placement exclusively based on a single, more generally defined determination: if, after a hearing, the court finds that physical placement with a parent "would endanger the child's physical, mental or emotional health." WIS. STAT. §§ 767.41(4)(b), 767.451(4) ; see also Wolfe v. Wolfe , 2000 WI App 93, ¶11, 234 Wis. 2d 449, 610 N.W.2d 222 ("Absent [the] finding [that placement with one parent would endanger the child], [the predecessor] statute [to § 767.41 ] requires the court to allocate periods of physical placement between the parents.").
¶40 It is true that some of the CHIPS grounds enumerated in WIS. STAT. § 48.13 use similar language to that of WIS. STAT. §§ 767.41(4)(b), and 767.451(4). See e.g. , § 48.13(10) (parent's neglect of child's needs "seriously endanger[s] the physical health of the child"); § 48.13(11) (parent refuses, neglects or is unable to address emotional damage that the child is suffering). Further, common sense dictates that many facts that would result in a CHIPS finding would also justify a denial of physical placement by a family court. However, there is not a clear and tight relationship between the more general standards for the denial of physical placement and all of § 48.13 's more specific grounds for CHIPS. For example, a child in need of protection or services because the child receives inadequate care due to his or her parent's hospitalization or incarceration may or may not be endangered physically, mentally, or emotionally such that the denial of all physical placement with that parent is justified under WIS. STAT. § 767.41(4).
¶41 Operating in areas of the law that are complex and that pose high stakes, the legislature has decided to divide all respondent parents into a family court order class and a juvenile court order class of purposes of addressing this ground for termination. There is nothing irrational about this general approach. And, given this general approach, C.H.B. fails to persuade me that the legislature could not reasonably conclude that parents denied physical placement through a family court order are, on the whole, sufficiently distinct in character from parents of children meeting a CHIPS ground under WIS. STAT. § 48.13 that it is reasonable for WIS. STAT. § 48.415(4) to require proof of prior warning for one class of parents, but not the other. See Aicher v. Wisconsin Patients Comp. Fund , 2000 WI 98, ¶57, 237 Wis. 2d 99, 613 N.W.2d 849 ("The task of drawing lines between different classifications is a legislative one in which perfection 'is neither possible nor necessary.' ") (quoted source omitted).
¶42 C.H.B. fails to address the difference between the family court statutory requirements that dictate which parents face the denial of physical placement and the CHIPS-related standards that dictate which parents face the denial of visitation. Thus, he does not address whether WIS. STAT. § 48.415(4) 's disparate treatment of these two types of orders is justified by the differing legal standards out of which they arise. Given this silence I cannot say that he has met his burden to overcome the presumption of § 48.415(4) 's constitutionality and show that the statute is unconstitutional beyond a reasonable doubt.[9] See Aicher , 237 Wis. 2d 99, ¶19 ("It is not sufficient for the challenging party merely to establish doubt about a statute's constitutionality, and it is not enough to establish that a statute probably is unconstitutional.").
¶43 Many of C.H.B.'s arguments are reiterations of the same point: the requirement of proof of prior warning helps some parents avoid termination under WIS. STAT. § 48.356(2). In particular, he notes that case law stresses the importance, in CHIPS cases, of providing parents with the warnings contained in § 48.356. See Waukesha County v. Steven H. , 2000 WI 28, ¶¶24-25, 233 Wis. 2d 344, 607 N.W.2d 607, modified by St. Croix County DHHS v. Michael D. , 2016 WI 35, ¶24, 368 Wis. 2d 170, 880 N.W.2d 107. However, C.H.B. does not develop an argument explaining how the general importance of warnings under § 48.356 supports his specific contention that WIS. STAT. § 48.415(4) is unconstitutional in all of its applications because it fails to require petitioners to provide proof of such notice for some but not all respondent parents whose rights are challenged under § 48.415(4).
CONCLUSION
¶44 For these reasons, and based on the arguments presented, I affirm the circuit court's orders determining that C.H.B. is unfit and terminating his parental rights to H.M.G., N.R.B., and H.L.B.
By the Court .-Orders affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

These appeals are decided by one judge pursuant to Wis. Stat. § 752.31(2)(e) (2015-16). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

C.H.B. was required to give notice to the state Attorney General of his intent to challenge the constitutionality of a state statute. See W.W.W. v. M.C.S. , 161 Wis. 2d 1015, 1024-25, 468 N.W.2d 719 (1991). The record reflects that C.H.B. sent a letter regarding this case to the Wisconsin Department of Justice dated August 15, 2018. To date, this court has received no correspondence or filings on behalf of the Attorney General in this appeal.

The record reflects that H.M.G., the oldest child, reached the age of 18 during the pendency of this appeal. This raises the possibility of mootness of C.H.B.'s appeal regarding H.M.G. See Wis. Stat. §§ 48.40(2) (defining "[t]ermination of parental rights" as a court order severing rights and responsibilities "existing between parent and child"), 48.02(2) (defining child, in pertinent part, as a person who is less than 18 years of age). But the parties have not addressed the issue of mootness and I address it no further.

The following is basic, brief background regarding the procedure for the termination for parental rights. There are two phases, a "grounds" or "unfitness" phase, and a dispositional phase. See Steven V. v. Kelley H. , 2004 WI 47, ¶¶24-28, 271 Wis. 2d 1, 678 N.W.2d 856. During the grounds phase, the circuit court determines whether the parent whose rights the petitioner seeks to terminate is unfit based on one of grounds listed in Wis. Stat. § 48.415. Steven V. , 271 Wis. 2d 1, ¶¶24-25. If the parent is found to be unfit, the case proceeds to the dispositional phase, during which the court determines whether termination is in the best interests of the child. Id. , ¶27.

C.H.B. argues in his principal brief on appeal that it is not possible for a party to forfeit the type of argument that he raises for the first time on appeal on the grounds that the party failed to preserve the argument by first raising it in the circuit court. S.M.G. and the guardian ad litem concede the point by failing to contest it. I assume without deciding that C.H.B. is correct on this point.

Wisconsin courts apply the same interpretations of the federal prohibition of states from "depriv[ing] any person of life, liberty, or property, without due process of law; nor deny[ing] any person within its jurisdiction of the equal protection of the laws," U.S. Const. Amend. XIV, § 1, as the state provision guaranteeing that "[a]ll people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness," Wis. Const. art. I, § 1. Metropolitan Assoc. v. City of Milwaukee , 2011 WI 20, ¶22, 332 Wis. 2d 85, 796 N.W.2d 717.

C.H.B. cites to Caban v. Mohammed , 441 U.S. 380 (1979), as an example of a court not applying rational basis review to a statute that affects fundamental and nonfundamental parental rights. That case, however, is distinguishable. In Caban , the Supreme Court applied what has been subsequently described as an intermediate level of scrutiny reserved for gender-based distinctions to a New York state adoption statute that used a gender-based classification. 441 U.S. at 385-86, 388 (Classifications by gender " 'must serve important governmental objectives and must be substantially related to achieve those objectives.' ") (quoted source omitted); see also State v. Herrmann , 2015 WI App 97, ¶¶10-11, 366 Wis. 2d 312, 873 N.W.2d 257 (describing the same test as "intermediate scrutiny").
A case that C.H.B. does not cite for the proposition that strict scrutiny applies to his facial constitutional challenge is Dane County DHS v. P.P. , 2005 WI 32, 279 Wis. 2d 169, 694 N.W.2d 344, in which our supreme court applied strict scrutiny. In P.P. , a parent respondent whose parental rights had been terminated challenged the constitutionality of Wis. Stat. § 48.415(4) on the grounds that it purportedly violated the substantive due process clause on its face. P.P. , 279 Wis. 2d 169, ¶15. Apparently based on the fact that the petitioner in that case did not dispute that the parent respondent had a fundamental liberty interest in parenting his children, our supreme court applied strict scrutiny. See id. , ¶20. The court's brief discussion in P.P. on the topic of the appropriate level of scrutiny does not suggest whether the parent respondent in that case conceded that the facial challenge necessarily implicated nonfundamental rights. See id. In any event, it is evident that P.P. does not announce a broad principle that strict scrutiny applies to facial challenges of statutes that implicate both fundamental and nonfundamental rights. Our supreme court has more recently reaffirmed that not all parental rights are fundamental. See Tammy W-G. v. Jacob T. , 2011 WI 30, ¶¶52-61, 333 Wis. 2d 273, 797 N.W.2d 854.

I could resolve this appeal based on the failure of C.H.B. to develop an argument based on rational basis review. He suggests that arguments he advances in favor of invalidating Wis. Stat. § 48.415(4) under strict scrutiny review necessarily support his position that the statute also fails under rational basis review. However, the analysis is quite different under the two levels of scrutiny. Nevertheless, I attempt to address his arguments as if he provided an argument relying on the correct standard.

I base my decision on the differences, identified in the text, between parents denied visitation in juvenile court orders and the parents denied physical placement in family court orders. However, without attempting to resolve their disputes, I now note that the parties discuss other possible, pertinent differences between the classes of parents identified by C.H.B. that may bear on the constitutionality of Wis. Stat. § 48.415(4) 's proof-of-warning distinction.
S.M.G. and the guardian ad litem point out that visitation is not an identical concept to physical placement. See Lubinski v. Lubinski , 2008 WI App 151, ¶¶8-9, 314 Wis. 2d 395, 761 N.W.2d 676 (noting that physical placement incorporates the right to make routine daily decisions, but visitation does not). In reply, C.H.B. contends that the similarities between physical placement and visitation are greater than their differences, particularly as those concepts relate to differing requirements of proof-of-warning imposed by Wis. Stat. § 48.415(4) and its overall purpose as a ground for the termination of parental rights.
S.M.G. and the guardian ad litem also argue that the purposes of Wis. Stat. ch. 48, the children's code, are distinct from Wis. Stat. ch. 767, dealing with actions affecting the family, and that these different purposes justify Wis. Stat. § 48.415(4) 's distinct treatment of orders originating in those separate statutory regimes. In reply, C.H.B. contends that the purposes and procedures of chapters 48 and 767 are in many ways compatible. For example, he observes that in some circumstances a family court determining placement must give the warnings described in Wis. Stat. § 48.356 (even though proof of those warnings is not required by § 48.415(4) ), and can declare a child in need of protection or services. Wis. Stat. § 767.41(3)(a) and (4)(b)(cm).